UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NIKKO KROHN,<br><br>Defendant | 3:18-CR-0391<br><br>(MARIANI, J.)<br>(MEHALCHICK, M.J.) |

### MEMORANDUM

This matter comes before the Court on Defendant's Motion for Pretrial Release Due to COVID-19. (Doc. 43). Defendant, Nikko Krohn, moves this Court to reconsider its earlier order of detention, and to order his temporary release due to a compelling reason pursuant to 18 U.S.C. § 3142(i). The Government opposes this motion. (Doc. 46).

I.  **BACKGROUND AND PROCEDURAL HISTORY**

On November 20, 2018, Krohn was charged by Indictment with one count of assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6) and 2. (Doc. 1). At his arraignment on December 3, 2018, Krohn entered a plea of "not guilty" to the Indictment, and waived his right to a detention hearing at that time. (Doc. 6; Doc. 9). On November 29, 2019, Krohn, through counsel, moved for release from custody (Doc. 36), and a detention hearing was scheduled for December 17, 2019. Following that hearing, the Court denied Krohn's motion, finding that continued detention was warranted based on consideration of the factors to be considered under the Bail Reform Act – the nature and circumstances of the offenses charged; the weight of the evidence against the defendant; the history and characteristics of the defendant, including his prior criminal history, lack of stable

employment, and significant family ties outside the United States; and the danger to the community should he be released.

Krohn is currently housed at Lackawanna County Prison. On April 17, 2020, Krohn, through counsel, filed a motion to review detention. (Doc. 43). In this motion, brought pursuant to 18 U.S.C. § 3142(i), Krohn seeks an order of temporary release to facilitate the preparation of a defense and due to a compelling reason – that he has a heightened risk of contracting COVID-19 due to his being incarcerated, and due to being an asthmatic. Krohn proposes that, should he be released, he will reside in Scranton and is amenable to the imposition of any conditions of release deemed appropriate by this Court or by Pretrial Services, including house arrest with electronic monitoring. (Doc. 44).

Counsel for Krohn filed a Notice with the Court on April 20, 2020 indicating that the parties were unable to come to an agreement regarding Krohn's release from detention, and indicating that Krohn believed a hearing is necessary to decide the motion, but that the Government does not believe a hearing is necessary.[1] (Doc. 45).

---

[1] The Court is unaware of any authority that provides a defendant with a right to a hearing when he seeks temporary release under § 3142(i), and the Court is able to resolve the motion without a hearing or oral argument.

**II.** **DISCUSSION**

    A.    THE COVID-19 PANDEMIC

On March 11, 2020, the World Health Organization declared the novel coronavirus known as COVID-19 a pandemic.[2] The COVID-19 outbreak caused the President of the United States to declare a national emergency and the Governor of the Commonwealth of Pennsylvania to declare a state of emergency.[3] As of the date of this writing, there are 3,672,238 confirmed cases worldwide and 254,045 deaths; in the United States, there are 1,193,452 confirmed cases worldwide and 65,197 deaths.[4] Mindful of the incredible magnitude of this situation, and the extreme health risks associated with COVID-19, the Court will address the motion for pretrial release.

    B.    CONDITIONS AT LACKAWANNA COUNTY PRISON

Included in the Government's brief in opposition (Doc. 46) to Krohn's motion for pretrial release are the preventative actions taken by Lackawanna County Prison in response

---

[2] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020).

[3] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/; Governor Tom Wolf's Proclamation of Disaster Emergency (March 6, 2020), *available at* https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf.

[4] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited May 7, 2020).

to the COVID-19 pandemic. Specifically, the prison implemented an action plan designed to mitigate the potential for spread of COVID-19 inside its facility, and for the protection of inmates and staff, including suspending contact visits, regular visitation, and visitation from volunteers, including religious leaders; implementing aggressive sanitation programs; suspending all programs that utilize "outside" employees; limiting individuals past reception to prison and medical staff; limiting attorney visits with inmates to meetings through the glass of a lawyer visitation room; cancelling all conferences and out-of-county trainings; planning for weekly contact with officials from the Pennsylvania Department of Corrections; and posting educational flyers in the blocks and in the reception area.

As of April 2, 2020, one correctional officer at the Lackawanna County Prison tested positive for the virus. The Government submits that, according to the U.S. Marshals Service, the officer who tested positive did not have any close contact with Marshal Service Personnel, and that it is unlikely, though possible, that the officer who tested positive had close contact with federal inmates at the prison. The inmates have been advised of the situation and are currently on lockdown. The prison continues to admit prisoners during the lockdown. Inmates are permitted out of their cells for showers, phone calls, attorney visits (through glass windows), and video teleconferencing for court proceedings. Additionally, all employees and other individuals (including counsel for inmates) be screened for fevers, and if necessary, other symptoms, upon entering the prison.

    C.    TEMPORARY RELEASE PURSUANT TO 18 U.S.C. § 3142(I)

Krohn moves for temporary release pursuant to 18 U.S.C. § 3142(i) of the Bail Reform Act. That section provides in relevant part as follows:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be *necessary* for preparation of the person's defense or *for another compelling reason.*

18 U.S.C. § 3142(i) (emphasis added).

The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court must carefully and impartially apply the proper legal standards that govern an individual's particular request for relief. *United States v. Roeder*, 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020).

In reviewing a § 3142(i) motion, the Court examines the (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. *See United States v. Veras,*, 2020 WL 1675975 (M.D. Pa. Apr. 6, 2020). These factors are particularly instructive in balancing the risk of exposure in prison against the other factors to be considered under the Bail Reform Act. *Veras*, 3:19-CR-010, 2020 WL 1675975, at *5-6; *United States v. Clark*, 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020); *see also United States v. Boatwright*, 2020 WL 1639855, at *8 (D. Nev. Apr. 2, 2020) (analyzing defendant's motion using the *Clark* factors and denying the motion where the defendant's motion is speculative, the original grounds for detention remain unchanged, and the risks of exposure are not mitigated for the defendant, and possibly increased for others); *United States v. Lunnie,* 4:19-CR-00180 KGB, 2020 WL 1644495, at *1 (E.D. Ark. Apr. 2, 2020) (motion denied based on analysis of *Clark* factors

despite defendant's history of bouts with bronchitis, high blood pressure, and recurring gastrointestinal problems, stemming from a gunshot wound to his abdomen); *United States v. Dodd*, 20-CR-0016 (NEB/HB), 2020 WL 1547419 (D. Minn. Apr. 1, 2020) (denying motion for temporary release after considering the *Clark* factors).

First, this Court has determined that there is no condition or combination of conditions which could reasonably assure the safety of the community should Krohn be released – consideration of the § 3142 factors results in a finding that detention is warranted. Second, although Krohn submits that his asthma places him at greater risk of contracting the virus, nothing in the record reflects that he is not receiving necessary treatment for his conditions while in Lackawanna County Prison, or that the prison is not taking steps to mitigate his risk for infection. Although mindful of the magnitude of the COVID-19 pandemic, and the extreme health risks it presents within the jail and prison setting, "a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation." *Boatwright*, 2020 WL 1639855, at *8; *see also Raia*, 2020 WL 1647922, at *2 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.")

Third, Krohn's proposed release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them. *Clark*, 2020 WL 1446895, at *6. Krohn only submits that he would reside in Scranton and would be amenable to any conditions of release, including home confinement and electronic monitoring. The proposed plan does not address any of risk factors that would arise if Krohn were released from custody. *Clark*, 2020 WL at 1446895, at *6. The Government has provided information on the prison's steps to address and mitigate the risks of COVID-19. Despite Krohn's conclusory

allegations that he has a heightened risk of contracting COVID-19 due to his pretrial detention, the information before the Court includes the prison's actual plan to reduce that risk. *Boatwright*, 2020 WL 1639855, at *7. Further, Krohn does not address the extent to which his risks of infection could be exacerbated if he were to be released, and he does not address how his other health issues will be treated outside the prison setting.

Finally, the Court considers the likelihood that Krohn's proposed release would increase COVID-19 risks to others. The Court has previously decided that Krohn should be detained, in part because he was unable to comply with other court orders, and because of his criminal history. A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties. *Boatwright*, 2020 WL 1639855, at *8. Krohn's release poses a substantial risk to the probation officers tasked with monitoring his behavior while he is out of jail on supervised release. *United States v. Lee,* 19-CR-298 (KBJ), 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020). If and when Krohn's proposed temporary release[5] plan ends, it will place the United States Marshals Service officers at risk in re-apprehending him or the facility at risk when he eventually reenters it after having had abundant opportunity for contamination. *See Lunnie*, 2020 WL 1644495, at *5.

---

[5] Having determined that Krohn does not establish a compelling reason for temporary release under § 3142(i), the Court will not reach what the scope of "temporary" might mean in this situation.

III. **CONCLUSION**

While the Court is sympathetic to the concerns regarding the spread of COVID-19, and recognizes the potential for Krohn's exposure to the virus while at Lackawanna County Prison, that potential exists anywhere in the community. Lackawanna County Prison has taken steps to minimize infection. There is no evidence that Krohn is not getting the medical attention he needs. In sum, Krohn has not presented a "compelling reason" for temporary release under 18 U.S.C. § 3142(i). As such, his motion for pretrial release (Doc. 43), is **DENIED**.

An appropriate Order will follow.

**Dated: May 7, 2020**                                *s/ Karoline Mehalchick*
                                                                          **KAROLINE MEHALCHICK**
                                                                          **United States Magistrate Judge**