THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| v. | : 3:18-CR-391 |
| | : (JUDGE MARIANI) |
| **NIKKO KROHN,** | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Pending before the Court is Defendant Nikko Krohn's Motion to Suppress Krohn's Letter to the Government Attorney ["Motion"] (Doc. 29). Defendant, through counsel, has filed this Motion to suppress a letter he sent to the government attorney investigating his case on the basis that it contains statements made during plea discussions.

A federal grand jury returned a one-count indictment on November 20, 2018, charging Defendant Nikko Krohn, an inmate at the United States Penitentiary, Canaan, with assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6) and 2. (Doc. 1). Krohn entered a plea of not guilty on December 3, 2018. (Doc. 6). Having waived his right to a detention hearing, Defendant was detained. (Doc. 9). At that time, Attorney Gino A. Bartolai was appointed to represent Defendant. (Doc. 8).

On March 20, 2018, the Government sent Defendant a letter stating, "This is to inform you that you are a target of a federal criminal investigation which is currently being conducted in the Middle District of Pennsylvania. This investigation is considering possible

1

violations of Title 18, United States Code, 133 assault." (Doc. 42 ["Target Letter"]). The Target Letter explained that Defendant was being advised of the investigation in order to allow him to produce any information that may bear on his innocence. (*Id.*). It additionally explained that Defendant had a right to obtain counsel and provided the contact information for the Federal Public Defendant's Office if he could not afford counsel. (*Id.*). The Target Letter stated, "I strongly urge you to obtain counsel and to have your representative contact the office immediately." (*Id.*).

On August 8, 2018, before being indicted, Defendant sent a letter in response to Assistant U.S. Attorney Todd Hinkley:

> Dear Mr. Hinkley,
> I have been a "target" for a criminal investigation in your district for Roughly 6 months! I have contacted my attorney & told him I was guilty and would like to see what's up with a plea deal? My attorney has not gotten back to me at all. I know the government usually trys to get individuals to plea before indictments on jail house cases. I'm guilty I did it. Now lets move on. If a plea is on the table, please shoot it too me so I can sign it! If theres not one, can we work on it? I'm not trying to drag it out. Shoot a plea deal that <u>does not</u> mention Mr. Rhodes (co-defendant) and I'll sign it, plead guilty & we could be done! The time frame doesn't really matter to me I'll plea to agg. assault. Please contact me @ Nikko Krohn 11119-089 Canaan USP Po Box 300 Waymart, PA 18472
>     Thank you for your time
>     Sincerely
>     [Signature]
>     The foregoing is true & factual under the penalty of perjury
>     [Signature] 8-7-18

(Doc. 29-1 ["Krohn Letter"]).

Defendant, through counsel, filed a Motion to Suppress Krohn's Letter to the Government Attorney on July 3, 2019. (Doc. 29). The parties have fully briefed the motion

2

and it is ripe for decision. For the reasons set forth below, the Court will deny Defendant's Motion to Suppress. (Doc. 29).

## II. ANALYSIS

In support of his Motion, Defendant argues, "Krohn respectfully submits that his letter to the Government Attorney should properly be characterized as an attempt to engage the prosecutor in 'plea discussions' and, as such, should not be admitted as evidence at his trial." (Doc. 30, at 2). In response, the Government argues the letter should not be suppressed "because plea discussions had not begun between the government and the defendant." (Doc. 34 at 3). The Court finds that plea discussions were not initiated at the time that Defendant sent his letter.

Generally, statements made by the defendant during plea discussions are inadmissible at trial. Federal Rule of Criminal Procedure 11(f) states, "The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Fed. R. Crim. P. 11(f)[1]. Federal Rule of Evidence 410 provides, in relevant part:

> In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
> (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

Fed. R. Evid. 410(a)(4).

---

[1] Previously Fed. R. Crim. P. 11(e)(6).

3

To determine what constitutes "plea discussions," courts have used two different approaches. Many courts that have addressed this issue have adopted the *Robertson* two-tiered test, which asks the court to determine "first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances." *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir. 1978); *see, e.g., United States v. Grant*, 622 F.2d 308, 312 (8th Cir. 1980); *United States v. Washington*, 614 F. Supp. 144, 149 (E.D. Pa. 1985), *aff'd*, 791 F.2d 923 (3d Cir. 1986). Other courts, recognizing that the *Robertson* test was only created to narrow the broad pre-amendment language of Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(e)(6), have adopted a totality of the circumstances approach. *United States v. Stein*, No. CR. 04-269-9, 2005 WL 1377851, at *8–9 (E.D. Pa. June 8, 2005)("After the 1980 amendments to the rules, there is no longer a need for the *Robertson* test."); *United States v. Lloyd*, 43 F.3d 1183, 1186 (8th Cir. 1994); *United States v. Penta*, 898 F.2d 815, 818 (1st Cir. 1990).

The Third Circuit has not explicitly adopted or rejected the *Robertson* approach. The Third Circuit's only case on this question is *United States v. Sebetich* in which the defendant's statements were admitted because the statements were not made during plea discussions. 776 F.2d 412, 421–22 (3d Cir. 1985). Without using the *Robertson* test, the Third Circuit held the conversation was not part of a plea discussion because:

> [The investigating police officer and the defendant] could not have expected to come to terms during an unplanned encounter in the American Legion parking

4

      lot, during the investigatory stage of the robbery, when [the defendant] had not even been charged with a crime. Nor could [the defendant] reasonably have believed that [the officer] had any authority to plea bargain because [the officer] told [the defendant] that he lacked such authority.

*Id.* at 422 (internal citations omitted). The district courts in the Third Circuit have been divided on which test to apply. *Compare Stein*, 2005 WL 1377851, at *8 (totality of the circumstances) *with Washington*, 614 F. Supp. at 149(employing the *Robertson* test, but noting "a clearly articulated, non-fact specific standard" would be "more easily administered"); *United States v. Jasin*, 215 F. Supp. 2d 552, 586 (E.D. Pa. 2002)(*Robertson* test). In other cases, courts have declined to choose one test. *See United States v. Bard*, No. 1:12-CR-181, 2013 WL 1882984, at *4 (M.D. Pa. May 6, 2013)(holding the court "need not resolve which test to apply"), *aff'd in part*, 625 F. App'x 57 (3d Cir. 2015); *United States v. McNaughton*, 848 F. Supp. 1195, 1202 (E.D. Pa. 1994)(relying only on the same factors used in *Sebetich*).

      Regardless of the approach taken, the Court will need to analyze whether it was reasonable for the defendant to consider the communication part of a plea discussion given the totality of the objective circumstances. The analysis in *Sebetich* controls here as the totality of the objective circumstances demonstrates that the letter to the federal prosecutor was not a statement made during a plea discussion.

      In *Sebetich*, one of the factors in holding the conversation admissible was the timing of the conversation, which happened during an investigation before the defendant had even been charged with a crime. *Sebetich*, 776 F.2d at 422. *See also United States v. McCauley*,

5

715 F.3d 1119, 1126 (8th Cir. 2013)(recognizing the fact that the conversation happened before an indictment was filed as one factor in finding the conversation admissible); *United States v. Merrill*, 685 F.3d 1002, 1013 (11th Cir. 2012)(holding a pre-indictment discussion admissible).

Krohn's letter to the federal prosecutor was similarly sent before he was charged. In fact, Defendant's August 7, 2018 letter to the federal prosecutor was sent about three months before an indictment was filed. (Doc. 29-1). At that point, the Defendant had only been informed he was a target of an investigation; he had not been charged yet.

Another factor to be considered in determining whether a communication constitutes plea discussions is whether the communication is a unilateral offer to plead guilty in exchange for a government concession. *Robertson*, 582 F.2d at 1367. For example, in one case similar to this matter, the defendant sent an unsolicited letter without the aid of his counsel to the federal prosecutor, stating, he wanted "to do the right thing." *United States v. Rivera*, No. 13-CR-149 KAM, 2015 WL 1725991, at *4 (E.D.N.Y. Apr. 15, 2015). The court held that the letter was not part of a plea discussion because the statements in the letter "do not express any hope for a reduced sentence, or mention the terms of a plea agreement, and was sent unsolicited by [the defendant] without the aid of his counsel." *Id.* at *5.

Just as in *Rivera*, Defendant's letter was sent unsolicited to the federal prosecutor and failed to mention any terms that would suggest the Defendant was seeking to negotiate a plea. Defendant writes, "I'm guilty I did it. Now lets move on. If a plea is on the table,

please shoot it too me so I can sign it! If theres not one, can we work on it? I'm not trying to drag it out." (Krohn Letter). Further, he states if a plea is sent to him, "I'll sign it, plead guilty & we could be done!" (*Id.*). Defendant does not mention at any point in his letter that he is seeking a reduced sentence nor does he try to negotiate any terms that would traditionally be included in a plea agreement. While Krohn's letter briefly mentions that he would sign "a plea deal that does not mention Mr. Rhodes (co-defendant)," it is not clear that this is a term he is negotiating as part of a plea agreement. (*Id.*). The passing mention of his co-defendant does not convert this communication into a plea discussion. Moreover, Krohn does not seek a government concession in exchange for his guilty plea. The statements Defendant makes suggest that he is seeking to confess and plead guilty as not to "drag it out," not to exchange information with the government or seek leniency through a plea agreement.

When Krohn wrote his letter, the Government had not made any offers to Krohn or discussed dropping charges. The only communication sent to Krohn from the government was the Target Letter. The Target Letter by its very terms is not an invitation to negotiate a plea. As Mr. Hinkley, the Assistant United States Attorney, stated during a hearing held on June 17, 2020, the target letter is a standard letter sent to targets of investigations, but it is not, on its own, intended to solicit a plea. Both parties admitted negotiations were not ongoing. Defendant's counsel conceded during the hearing that there were no discussions from the time of the issuance of the Target Letter on March 20, 2018 to the date of the

Krohn's Letter of August 7, 2018 wherein he stated, "I'm guilty I did it." (Krohn Letter). Defendant's counsel acknowledged as much when he stated at the hearing:

> I have to tell you, I really think it's a case of interpretation of those two documents, and I think I'm hard pressed to say—to acknowledge that there were plea negotiations ongoing between Mr. Hinkley and Mr. Krohn, because there were no discussions at that point. If at all, it has to be found that the letter from Mr. Hinkley, somehow was the beginning to engage in a plea discussion. And I don't know if the Court—I don't know if I've convinced the Court of that.

(Unofficial Transcript of June 17, 2020 Hearing, at 18:1–9).

Lastly, the absence of a defendant's attorney suggests a statement is not part of a plea discussion. One case suggested that the presence of defense attorney makes it more likely that communications are "part of a formal negotiated process directed toward a plea and not just a voluntary confession in hopes of leniency." *Stein*, 2005 WL 1377851, at *11. *See also McCauley,* 715 F.3d at 1126 (noting the defendant's failure to consult counsel as a factor in its holding a conversation admissible).

The Target Letter informed Krohn that he had the right to retain counsel and provided contact information for the Federal Public Defender's Office in the case that he would be unable to afford counsel. (Target Letter). The Target Letter further stated, "I strongly urge you to obtain counsel and to have your representative contact this office immediately." (*Id.*). Krohn contends that he contacted his attorney and told him "I was guilty" and that he would like to "see what's up with a plea deal," but his attorney "has not gotten back to me at all." (Krohn Letter). Though the Target Letter advised Defendant to have his representative contact the US Attorney's Office, Defendant wrote a letter to the office

8

himself without the assistance of counsel. In this case, the lack of input from Defendant's counsel suggests that the Letter was not a part of a formal plea discussion, but instead may more likely be a confession by Defendant. Federal Rule of Evidence 410 does not provide for the exclusion of "unwise or uninformed confessions." *Robertson*, 582 F.2d at 1368. Defendant argues that "formalities are often dispensed with when discussing pleas and resolutions of cases." (Doc. 35, at 3). While that may or may not be true, it does not speak to whether this specific communication was "made during plea discussions." Fed. R. Ev. 410(a)(4). In this specific case, the act of Defendant sending an unsolicited letter without the participation of counsel indicates that the communication was not made during plea discussions.

Taking into consideration the totality of the objective circumstances surrounding Krohn's Letter, Defendant could not have reasonably expected this communication to be considered part of a plea discussion. Defendant's inculpatory statement was made informally in an unsolicited letter to the Assistant US Attorney without the participation of his counsel before charges were ever filed. While Krohn used the words "plea deal," the letter does not indicate any interest in negotiating a plea, such as seeking a government concession or offering to exchange information for leniency. There are no facts of record that support the assertion that at the time Krohn sent his letter, the letter was sent during ongoing, offered or contemplated plea discussions.

Defendant Krohn's August, 8, 2018 letter to the United States Attorney's Office did not contain statements that were made during plea discussions with an attorney for the prosecuting authority, and is, therefore, admissible.

### III. CONCLUSION

For the foregoing reasons, this Court will deny Defendant's Motion to Suppress (Doc. 29) as set forth in this Memorandum Opinion. A separate Order follows.

*[signature]*
Robert D. Mariani
United States District Judge